UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KYLE & BETTY DAVIS,

               Plaintiffs,

v.

TRANE, U.S., INC.,

               Defendants.

_____/

Case No. 15-11125

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
ELIZABETH A. STAFFORD

**OPINION AND ORDER ON MOTIONS IN LIMINE [136, 138, 139, 141, 142, 143, 144, 145, 146, 147, 148, 161]**

Kyle Davis was an employee of a contractor tasked with moving an approximately five-ton commercial chiller into Wayne Memorial High School on March 30, 2012. The chiller fell over during installation, crushed Mr. Davis, and rendered him a quadriplegic.

Plaintiffs, Kyle Davis and his wife Betty Davis, brought this products liability suit on March 26, 2015 to recover damages from the allegedly dangerous design of the chiller, which was a Model RTWD Series R 70-250 ton water-cooled helical and rotary chiller manufactured by Defendant Trane, U.S., Inc. [Dkt. # 1]. Before the Court are 12 motions in limine brought by both Plaintiffs [136, 138, 139, 141, 142,

161] and Defendant [143, 144, 145, 146, 147, 148]. A hearing was held on November 26, 2019, and all but one of these motions were taken under advisement.

<h2 style="text-align:center">STANDARD OF REVIEW</h2>

"Orders in limine which exclude broad categories of evidence should rarely be employed." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). The court should exclude evidence in advance of a trial only when evidence is clearly inadmissible on all potential grounds. *Indiana Ins. Co. v. Gen. Elec. Co.,* 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Luce v. United States,* 469 U.S. 38, 41 n. 4 (1984)). Unless movant makes such a showing, evidentiary rulings should be made in trial, so that "questions of foundation, relevance and potential prejudice can be resolved in proper context." *Id*. The denial of a motion in limine, therefore, creates no guarantee that the evidence at issue will be admitted at trial. *Id*.

<h2 style="text-align:center">ANALYSIS</h2>

## I.   DEFENDANTS' MOTIONS

### Defendant's Motion in Limine To Exclude Dissimilar "TIM Tickets" and Other Incident Evidence [146] and Defendant's Motion to Exclude Quebec Installation Video [147]

Plaintiffs bring this products liability suit under several theories of negligence: negligent design, negligent failure to warn, implied warranty, express warranty, and negligent misrepresentation. They have also alleged gross negligence and willful

disregard. At issue is whether evidence of other similar incidents ("OSI") is admissible to prove negligent design. OSI evidence may also be admissible to prove gross negligence or willful disregard where previous accidents are alleged to have provided Trane with notice of the chiller's dangerous design.

> To prove a design defect under Michigan law, a plaintiff must show that the product was "not reasonably safe for its foreseeable uses" and that a "risk-utility analysis" favored a safer design. Under this approach, a plaintiff must show that (1) the product was not reasonably safe when it left the control of the manufacturer; and (2) a "feasible alternative production practice was available that would have prevented the harm without significantly impairing the usefulness or desirability of the product to users."

*Croskey v. BMW of N. Am., Inc.,* 532 F.3d 511, 515–16 (6th Cir. 2008) (quoting M.C.L. 600.2946(2)).

The first of the six factors under Michigan's risk-utility doctrine is "that the severity of the injury was foreseeable by the manufacturer." *Id*. OSI evidence may therefore goes not only to the danger of the chiller's design, but also to the question of whether "the manufacturer exercised reasonable care in making the design choices it made." *Prentis v. Yale Mfg. Co.,* 421 Mich. 670, 688, 365 N.W.2d 176 (Mich. 1984).

Whether the jury's inquiry into this matter will incorporate OSI evidence will depend on whether Plaintiff can prove that those incidents are truly similar. Federal Rules of Evidence 401 & 403 require evidence introduced at trial to meet minimum standards of relevancy. With that in mind, the United States Court of Appeals for the

Sixth Circuit has found that other similar incidents must be "substantially similar" to the one at issue to be admissible. *Surles ex. Rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288 (6th Cir. 2007) (quoting *Rye v. Black & Decker Mfg. Co.*, 889 F.2d 100, 102 (6th Cir.1989)). "Incidents which 'occurred under similar circumstances or share the same cause' can properly be deemed substantially similar." *Id*. For instance, in a case where a railing on the fourth floor of a stairwell gave way, evidence that the railing on the third floor almost gave way when a worker leaned against it is admissible.

> Such evidence is relevant as tending to show the dangerous condition of the premises, and [Defendant's] knowledge of such condition, if it relates to an occurrence which happened under substantially the same conditions at substantially the same place as the accident in suit and at a time not too remote therefrom.

*New York Life Ins. Co. v. Seighman*, 140 F.2d 930, 932 (6th Cir. 1944).

Defendants challenge the admissibility of evidence of 29 incidents that Plaintiffs maintain are substantially similar to the March 30, 2012 accident. Plaintiffs can prove admissibility if the proposed OSI either a) occurred under similar circumstances, or, b) shared the same cause, as the incident for which damages are sought.

The first grouping of other similar incidents can be found in Plaintiff's exhibits of TIM Tickets. Trane produced records in a system called Trane Interaction Management ("TIM") for the purpose of determining whether warranties should be

honored on damaged products. Plaintiff has proffered 27 "tickets" from this system which record discussions on whether warranties should be honored, and whether repair was possible, for various chillers that were damaged during installation, typically by falling over. Each ticket provides a brief description of what happened and a brief description of the parts of the chiller that were damaged in the fall. Photographs of the damaged components are usually attached. One of those TIM Tickets refers to the "Quebec Installation," where a video is also available of an RTWD chiller tipping over in a loading bay while a man is doing something behind it that is not visible from the video.

Defendant argues that these incidents are not substantially similar, because they occurred under different circumstances and their causality is unknown. Trane has observed that Kyle Davis was supervising employees in an attempt to 1) install 2) a Trane RTWD 250 model chiller 3) on isolator feet 4) by using a tool as a jack to elevate the chiller up in the air from underneath 5) without the use of an overhead lifting support 6) that tipped over during installation. It argues that exceedingly few of these factors can be found in any of the TIM Tickets.

The Sixth Circuit has cautioned against "too narrowly" defining similar circumstances. *Rimer v. Rockwell*, 641 F.2d 450, 456 (6th Cir. 1981). The substantial similarity rule does not require that products be identical, but only that there be "substantial similarity among the variables relevant to the plaintiff's theory of

defect." *Smith v. Ingersoll-Rand Co*., 214 F.3d 1235, 1248 (10th Cir. 2000). This rule has been adopted by the Sixth Circuit in *Clark v. Chrysler Corp*., 310 F.3d 461, 473-74 (6th Cir. 2002) (overruled on other grounds by *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003)). Relatedly, "the relevance of the evidence will thus depend not only on the character of the evidence itself but on the purpose for which it is offered." *Koloda v. Gen. Motors Corp*., 716 F.2d 373, 375 (6th Cir. 1983). Plaintiffs offer several purposes for the other similar incidents:

- To prove the existence of a product defect.
- To prove notice of a hazardous condition.
- To prove indifference towards the risk.
- To prove a plan or a scheme.
- To prove causation.

Relevancy is the tendency of a fact to prove or disprove the truth of a point in issue. Incidents that do not take place under similar circumstances might still be substantially similar if they share a common cause. Plaintiffs' proffered common cause is the high center of gravity, which makes tip-overs more likely.

"[A] jury would be far more likely to find that a design is defective if it learns that the alleged defect resulted in a number of accidents." *Rimer*, 641 F.2d at 456. Plaintiffs must, therefore, establish a reasonable connection between the alleged defect and the other accidents. If the other accidents were caused by forces not at play in Plaintiffs' accident, they are not relevant.

In one unpublished Sixth Circuit opinion, a panel held that a plaintiffs' proposed OSI in an exploding barrel firearm case were properly excluded by the district court due to plaintiff's inability to rule out other causes.

> Although the other incidents identified by the Plaintiffs involved barrel failures, they could not point to or rule out any cause of those failures. Based on the Plaintiffs' inability to describe the factual circumstances surrounding each failure, the other incidents were properly excluded because there was no showing that they were "substantially similar" to Rodney's accident.

*Palatka v. Savage Arms, Inc.*, 535 F.App'x 448, 460 (6th Cir. 2013); *but see Cincinatti Ins. Co. v. Banks*, 610 F.Appx. 453, 461 (6th Cir. 2015) (holding that where an insurer claimed that an insured set the fire that destroyed his house, the court did not err by admitting into evidence other house fires that occurred within the same area and time span, even though deeper similarities were not shown).

Of the 27 TIM Tickets, some are more detailed than others. For instance, the July 2009 Edmonton, AB Incident is given only the one-line description: "chiller was dropped on it's [sic] side." (Dkt. 146-2). By contrast, the June 2010 Jackson, TN incident provides a more detailed description of how the chiller tipped over after hitting a low spot in the mechanical room while being wheeled on castors. (*Id.*). Defendant has not established that no witness could capably testify that at least some of the chiller tip-overs described in the TIM Tickets occurred because of a high center of gravity. If Plaintiffs fail to demonstrate either similar circumstances or similar cause at trial for any given TIM Ticket, the evidence will be excluded as irrelevant. That is not a determination that can be made, however, until it is clear exactly how the witnesses characterize the circumstances and causality of the OSI.

Defendants also argue that the TIM Tickets are hearsay. Rule 801 of the Federal Rules of Evidence provides that a statement is not hearsay if it is offered against a party and "was made by the party's agent or employee within the scope of that relationship and while it existed." FED. R. EVID. 801(d)(2)(D). This is not to say that every statement that appears within every TIM Ticket is an opposing party's statement, but the records themselves will not be excluded as hearsay.

Finally, Defendants argue that OSI evidence will be unfairly prejudicial to their case. Rule 403 of the Federal Rules of Evidence provides for the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. *Olin-Mathieson Chem. Corp. v. Allis-Chalmers Mfg. Co.*, 438 F.2d 833, 837-838 (6th Cir. 1971). There is no indication at this juncture that jurors will be unable to understand the difference between the Davis incident on trial and OSI involving different factual backgrounds.

## Defendant's Motion in Limine to Exclude Tanhyun, Korea Other Incident Evidence [145]

In the Tanhyun, Korea incident, refrigerant leaked from a Trane chiller while it was being serviced, and four people died of oxygen deficiency due to the toxic effects of the leak. The incident clearly did not arise under similar circumstances or from a common cause as the Davis incident, as required by Sixth Circuit law. Nevertheless, Plaintiffs argue that this case goes to the magnitude of the risk

associated with the chiller, as it proves that Trane acted unreasonably by designing an easy-to-tip machine filled with toxic gas.

What Plaintiffs assume, however, is that a tip-over could cause a refrigerant leak. Though this is hardly out of the question — the first thing the crew did after the RTWD fell on Davis was test the air for refrigerant — there are no recorded cases on the record where a tip-over caused a refrigerant leak. Moreover, Plaintiffs could introduce evidence that the refrigerant within the chiller is toxic either by stipulation or by questioning a qualified witness. A lurid description of the Tanhyun, Korea incident would not be relevant to the issues in this trial.

## Defendant's Motion in Limine to Exclude Admission of Taicang, China Incident Evidence [143]

In the Taicang, China incident, a chiller was lifted by overhead chains and, while being maneuvered by employees, spun in place and crushed one employee's hands in the chains. After the Taicang China incident, Trane changed the location of its lift points on the RTWD to improve lift safety.

Trane's Taicang report lists four corrective actions to avoid similar accidents. Though three of the corrective actions involve lifting strategies, the fourth is to "design the tip over hazard out of the product." (Dkt. 143-3). The "RTWD Phase 2 Lifting Improvement" clarifies what this might mean by noting "[m]ost of condenser side bracket lifting point is over [Center of Gravity], can not get high lifting point for strength limitation of bolt and space in tubesheet under considered load

condition." (Dkt. 143-4). The report contains graphics with the center of gravity labeled and comparisons of the tip angle for RTWD models with different lifting points. When Plaintiffs say that the Taicang incident was caused by the RTWD's unusual weight distribution, and when Defendant says that the Taicang incident was caused by sub-optimal rigging procedures and lifting points, they are saying the same thing. Plaintiffs can colorably argue that incident occurred because the center of gravity moved above the supporting cables, causing the sudden inversion. Such a narrative of the Taicang incident plausibly suggests a common cause — the high center of gravity — with the Davis incident.

## Defendant's Motion in Limine to Exclude Evidence of Subsequent Remedial Measures [148]

In 2015, Trane engineers and officials began discussing efforts to mitigate the danger posed by the horizontal movement of Trane chillers. This included a warning sign that was eventually implemented and that warned that the chiller was top-heavy.

Federal Rule of Evidence 407 provides:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
> - negligence;
> - culpable conduct;
> - a defect in a product or its design; or
> - a need for a warning or instruction.

But the court may admit this evidence for another purpose, such as impeachment or — if disputed — proving ownership, control, or the feasibility of precautionary measures.

Fed. R. Evid. 407.

Plaintiffs seek to circumvent this rule by arguing that subsequently added warning label would not have prevented the accident and therefore was not a remedial measure. They argue that the new warning label added after the 2015 discussions was duplicative of the old warnings that were in place when Davis was injured. The warning label could not have "made an earlier injury or harm less likely to occur" they argue, because the same warning existed in 2012.

In both the 2012 and 2015 warning, a three-language fine print "WARNING" is used with "IMPROPER LIFTING AND MOVING" in the subheading. (Dkt. 148-7). In the 2015 version, a separate sticker is added to the chiller with the same orange WARNING strip, but also a picture of the chiller with red arrows pointing in the directions it could fall and the larger print all caps language "EQUIPMENT IS TOP HEAVY, USE CAUTION WHEN LIFTING/MOVING EQUIPMENT." (Dkt. 148-6; Dkt. 184-8).

Though the effect may have been small, a more visible sign making clear that the chiller was top heavy and therefore a fall risk certainly tended to decrease the risk of tip-overs by more effectively informing the installer of the chiller's weight distribution. Plaintiffs cite no case law for their theory that subsequent remedial

measures must be in response to the specific accident at issue, and indeed such a theory would add language to Rule 407. Evidence of the subsequently added warning sign will be excluded.

Defendants also seek to exclude certain discussions regarding the top-heavy weight distribution of the chiller. These discussions will be excluded if they part of the planning for the subsequent remedial measures. *See In Re Air Crash Disaster*, 86 F.3d 498 (6th Cir. 1996) (holding that post-crash internal memoranda considering the advisability of a certain safety check that could have prevented the crash were "part of a discussion about whether [Defendant] should recommend the check in the future" and therefore excludable under Rule 407). They will not be excluded under Rule 407, however, when the measures discussed were not actually executed.

## Defendant's Consolidated Motions in Limine [144]

Defendant has moved to exclude 25 specific types of evidence. These sub-motions range from the non-controversial to the ambitious. The issues raised in these 25 sub-motions will be considered if and when they arise at trial.

## II.    PLAINTIFFS' MOTIONS

## Plaintiffs' Motion in Limine to Exclude Portions of Thornton Testimony and Documents [136]

Nicholas Thornton was employed by the Wayne Westland Community School District as the Supervisor of Energy Management Facility Services at the time of the accident. He came to the scene after Mr. Davis had been removed by EMS and spoke

to several individuals. On the basis of conversations and observations at the scene, Thornton wrote a brief report and gave testimony in deposition to the effect that Johnson & Wood (Davis' employer) was at fault for not using a professional rigging service like they had told the school district they would. (Dkt. 136-2; 136-3).

Rule 701 of the Federal Rules of Evidence requires lay witnesses to testify on that which is "rationally based on the witness's perception." FED. R. EVID. 701(a). Thornton will be permitted to testify on the information he gathered from his observations while at the scene of the accident. He will not be permitted to testify on what he surmised from hearsay conversations or his own hypotheses regarding who is at fault for Davis' injury.

Plaintiffs argue that Thornton's Report, which is a brief summary of the events of the accident, is inadmissible hearsay and properly excluded under Rule 801. Defendant argues in response that the report falls within the business records exception to the hearsay rule because the record was "kept in the course of a regularly conducted business activity." FED. R. EVID. 803(6). In order for the report to be admissible under this exception, Defendant must also show that "making the record was a regular practice of that activity." *Id*. There is no evidence on the record that Thornton had a regular practice of making reports about contractors' accidents at the school district.

Defendant cites two cases that emphasize that non-routinely kept business records should not be excluded if the other indicia of trustworthiness mentioned in Rule 803(6) are present. *See U.S. v. Jacoby*, 955 F.2d 1527, 1538 (11th Cir. 1992) & *Kassel v. Gannett Co.*, 875 F.2d 935 (1st Cir. 1989). Both of these cases held that interruptions in routine record-keeping should not suffice to exclude evidence. In this case, there is no indication that Thornton kept routine records of any sort. Absent evidence to the contrary, his report will be excluded.

### Plaintiffs' Motion in Limine to Exclude and Limit Evidence and Argument Regarding Non-Parties at Fault / Apportionment [138]

On August 10, 2015, Trane filed a notice of nonparty fault against three parties: Johnson & Wood, L.L.C. (Davis' employer); Wayne Westland Community Schools; and Melton Truck Lines, Inc. Plaintiff moved to strike the notice of non-party fault against Johnson & Wood [18]. District Judge Avern Cohn issued a Memorandum and Order [24] denying Plaintiff's motion on February 10, 2016. The order analyzed Michigan's Tort Reform Laws of 1996 and found that under M.C.L. 600.2957(3), non-party fault could be properly allocated to an employer, even if the Workers' Compensation and Disability Act would bar recovery from the employer.

Plaintiffs now argue that Johnson & Wood was not properly named as a non-party at fault, because it could only be at fault by *respondeat superior*, and that *respondeat superior* is not available for purposes of allocating non-party fault. MCL 600.2957(1) states in relevant part:

> In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each person shall be allocated under this section by the trier of fact and…in direct proportion to the person's percentage of fault. In assessing percentages of fault under this subsection, the trier of fact shall consider the fault of each person, regardless of whether the person is, or could have been, named as a party to the action.

"The tort-reform statutes have replaced joint and several liability in most cases, with each tortfeasor now being liable only for the portion of the total damages that reflects that tortfeasor's percentage of fault." *Kaiser v. Allen*, 480 Mich. 31, 37, 746 N.W.2d 92, 95 (Mich. 2008).

Plaintiffs argue that in interpreting the interplay of vicarious liability doctrines and M.C.L. 600.2957(1), the *Kaiser* court excluded vicariously liable parties from non-party fault allocation. *Kaiser* dealt with the question of whether the common-law set-off rule still applied that would spare the owner of a car from statutory vicarious liability where a driver (who was not the owner) was at fault for the crash. Essential to the Supreme Court's ruling was the finding that a contrary rule would allow a plaintiff to collect twice, once against the owner of the car and a second time against the driver. The Court's holding is as follows:

> To the extent that joint and several liability principles have not been abrogated by statute, they remain the law in Michigan. In vicarious-liability cases, in which the latent tortfeasor's fault derives completely from that of the active tortfeasor, there can be no allocation of fault.

*Kaiser*, 480 Mich. at 35–36, 746 N.W.2d at 94.

It would, for instance, be inappropriate for Defendant to assign the same fault to active tortfeasors and latent tortfeasors. Plaintiffs are right that the acts or omissions of a vicariously liable tortfeasor do not constitute the proximate cause of that injury. Here, however, Defendant is alleging multiple acts or omissions by Johnson & Wood — including the failure to provide the Manual for the chiller to Davis and the failure to instruct him on the proper use of the hydraulic jack — that it alleges proximately caused his injury. These acts and omissions are properly attributed to Johnson & Wood, not its various employees and corporate officers individually. *Kaiser* certainly does not go so far as to create a rule that no corporate entity can be named as a third-party at fault.

### Plaintiff's Motion in Limine to Exclude Evidence and Argument that the Use of a Lifting Device to Jack Up the Chiller was Improper or that the Hydraulic Ram was Improperly Used as a Jack [139]

Defendant has maintained that Johnson & Wood's decision to use a Westward hydraulic ram to jack up the chiller was dangerous, because 1) Trane's instructions provided that the chiller should only be lifted from overhead or with a forklift, and 2) Westward instructed that the hydraulic ram should not be used a jack. Plaintiff disputes that either Trane's or Westward's instructions were actually given and argues that evidence that the use of the hydraulic ram was improper is irrelevant and prejudicial.

The major issue implicated by this motion is whether Trane's instructions adequately conveyed that the use of a jack was improper for installation. The Installation and Operation Manual, which Plaintiffs dispute was ever provided to Johnson & Wood, states that "[t]he Model RTWD/RTUD chiller should be moved by lifting, unless the unit is ordered with the 'Base Rail Forklifting' option." The following page contains an all-caps WARNING with "Lifting and Moving Instructions!" detailing how the chiller should be lifted. (Dkt. 159-2). Defendant interprets this as evidence that the instructions made clear that only overhead lifting was proper. Plaintiffs interpret these instructions as evidence that the instructions did not explicitly rule out the use of a jack. This is a dispute for the jury to resolve.

A motion in limine should not be used to resolve the factual questions of whether Trane's instructions precluded maneuvering the chiller by use of a jack and whether the hydraulic ram was an appropriate tool to use as a jack. "In light of their limited purpose, motions in limine should not be used to resolve factual disputes, which remains the function of a motion for summary judgment, with its accompanying and crucial procedural safeguards." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quoting *Williams v. Johnson,* 747 F.Supp.2d 10, 14 (D.D.C.2010)). Arguments that the use of a jack to lift the chiller was improper will not be excluded at this juncture.

The secondary issue is whether the crew's use of the Westward hydraulic ram was improperly used as a jack. Plaintiff argues that because it is undisputed that the ram behaved just as a jack would have behaved, its improper use is irrelevant. Defendants observe that the use of the ram was the basis for one of the MIOSHA's citations against Johnson & Wood. This does not automatically make the issue admissible, as will be discussed in the section on the MIOSHA Report, but it can if there is evidence that the violation of safety guidelines caused Davis' injury. The admissibility of evidence regarding the improper use of the ram as a jack will depend on whether Defendant produces evidence that the improper use *per se* (beyond the alleged decision to jack up the chiller) was a cause of Davis' injury.

**Plaintiff's Motion in Limine to Exclude Evidence or Argument that Trane Provided the Installation and Operation Manual to Johnson & Wood or that Plaintiff Failed to Read the IOM Manual [141]**

Plaintiffs argue that there is no evidence that Johnson & Wood ever received the Installation and Operations Manual ("IOM") for the chiller, and that Defendant should not be able to argue that they did. Plaintiffs and Defendant both offer differing interpretations of the testimony of Trane sales engineer Matthew Krusniak, Johnson & Wood officer Brian Johnson, Plaintiff Kyle Davis, and Johnson & Wood's Safety Director, Steven Hall. As discussed avove, the purpose of motions in limine is not to resolve factual disputes in advance of trial. The question of whether or when Johnson & Wood received the IOM is a question for the jury.

**Plaintiff's Motion in Limine to Exclude MIOSHA Report, Reference to and Reliance on the Report, and Testimony of MIOSHA Inspector [142]**

Following the incident, the Michigan Occupational Safety and Health Administration ("MIOSHA") conducted an investigation, produced a report, and levied fines against Johnson & Wood. Those fines were reduced pursuant to a settlement between Johnson & Wood and MIOSHA. Plaintiff argues that evidence of the report, of the citations, of the fines, and of the settlement should all be excluded.

For a "violation of administrative rules and regulations" to be relevant, the proponent must establish that "(1) the regulation is intended to protect against the injury involved; (2) the plaintiff is within the class intended to be protected by the regulation; and (3) the evidence will support a finding that the violation was a proximate cause of the injury involved." *Estate of Goodwin by Goodwin v. Nw. Michigan Fair Ass'n*, 325 Mich. App. 129, 164, 923 N.W.2d 894, 919 (Mich. Ct. App. 2018) (citing M. Civ. JI 12.03, use notes; M. Civ. JI 12.05). "[R]elevance must be specifically established" before evidence of a violation may be used as evidence of negligence. *Klanseck v. Anderson Sales & Serv., Inc.*, 426 Mich. 78, 87, 393 N.W.2d 356 (Mich. 1986).

The question therefore is whether evidence of the conduct for which the MIOSHA citations were issued would support a finding that such conduct proximately caused Davis' injury. Citation Number one was for violating the rule:

"after a load has been raised, it shall be immediately cribbed, blocked, or otherwise secured." (Dkt. 142-2). Citation Number 2 was for violating the rule: "an accident prevention program was not developed, maintained, and coordinated with employees." (*Id.*). It is certainly possible that evidence introduced at trial could support a finding that either the lack of support or the lack of an accident prevention program proximately caused Davis' injury. The question of the admissibility of the citations is therefore best resolved in light of the evidence presented at trial.

Trane has conceded that the settlement agreement between Johnson & Wood and MIOSHA will be inadmissible at trial. (Dkt. 158, pg. 19).

Plaintiffs also challenge the admissibility of the MIOSHA report. Rule 803(8) of the Federal Rules of Evidence provides for a public record exception for hearsay.

> A record or statement of a public office if:
> **(A)** it sets out:
> **(i)** the office's activities;
> **(ii)** a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
> **(iii)** in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
> **(B)** The opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

FED. R. EVID. 803(8).

In determining whether the "sources of information or other circumstances" indicate lack of trustworthiness, the Advisory Committee Notes suggests four factors for consideration:

(1) the timeliness of the investigation; (2) the special skill or experience of the official; (3) whether a hearing was held on the level at which conducted, and (4) possible motivational problems.

*Baker v. Elcona Homes Corp.,* 588 F.2d 551, 558 (6th Cir. 1978).

Looking to the Advisory Committee's four-part inquiry, the MIOSHA report lacks indicia of trustworthiness. The investigation was conducted ten days after the incident by an experienced workplace safety investigator, and so the first two factors are satisfied. No hearing was held, however, and so the third factor is not satisfied. Most problematically, the original copy of the investigative report has been lost, and so the only copy of the report has all of the source witnesses' names redacted. Absent the identities of the source's witnesses, it would be impossible for them to be cross-examined on motivations they may have had for answering the way they did.

An investigatory report will not be admissible if the sources of its factual findings are unreliable. *See Miller v. Field*, 35 F.3d 1088, 1091 (6th Cir. 1994) (holding that Rule 803(8) does not dispense with the requirement that the investigator-declarant have first-hand knowledge of his or her factual findings); *but see Combs v. Wilkinson*, 315 F.3d 548, 555–56 (6th Cir. 2002) (admitting a police investigation report where the investigator had interviewed 123 witnesses on matters which the witnesses had observed.). There is no bright-line rule on how many or what types of witness statements should support the admission of an investigative report derived from those statements as evidence.

"[R]ule 803(8)(C) [should be applied] in a common sense manner, subject to the district court's sound exercise of discretion in determining whether the hearsay document offered in evidence has sufficient independent indicia of reliability to justify its admission." *Miller v. Caterpillar Tractor Co.,* 697 F.2d 141, 144 (6th Cir.1983) (quoting *City of New York v. Pullman, Inc.,* 662 F.2d 910, 914 (2d Cir.1981)). As long as the sources in the report remain redacted, the MIOSHA Report's conclusions — derived as they are from these sources, whose motivations and sources of knowledge are unknown — are unreliable. The MIOSHA Report will therefore be excluded.

## Emergency Motion to Exclude Defense Expert Mattice's Untimely Rebuttal and New Opinions [161]

Plaintiffs seek to exclude evidence and data produced by Defense expert Jason Mattice which they argue was produced two years after expert report disclosures were due. For the reasons stated on the Record, this motion is granted.

### CONCLUSION

Defendant has filed six motions in limine. The Court will exclude evidence of the Tanhyun, Korea incident and Trane's subsequent remedial measures will be granted. The admissibility of OSI evidence from the TIM Tickets, the Quebec Installation video, and the Taicang China Incident is best determined at trial.

Plaintiffs have also filed six motions in limine. The Court will exclude the Thornton Report, the MIOSHA Report, and the late-filed Mattice Report. The

admissibility of the range of other issues implicated by Plaintiffs' motions will be determined at trial.

All of the Court's rulings are tentative and may be amended or reversed depending on circumstances and facts which arise at trial.

Accordingly,

**IT IS ORDERED** that Defendant's Motions to Exclude Tanhyun, Korea Other Incident Evidence [145] and to Exclude Evidence of Subsequent Remedial Measures [148] are **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendant's Motions to Exclude Admission of Dissimilar TIM Ticket Other Incident Evidence [146], to Exclude Quebec Installation and Video Other Incident Evidence [147], and to Exclude Admission of Dissimilar Taicang, China Incident Evidence [143] are **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Consolidated Motions in Limine [144] are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motions to Exclude Portions of Thornton Testimony and Documents [136] and to Exclude MIOSHA Report, Reference to and Reliance on the Report, Citation, and Testimony of MIOSHA Inspector [142] are **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motions to Exclude and Limit Evidence of Argument Regarding Non-Parties at Fault / Apportionment [138], to

Exclude Evidence and Argument that Use of a Lifting Device to Jack Up the Chiller was Improper or that the Hydraulic Ram was Improperly Used as a Jack [139], and to Exclude Evidence or Argument that Trane Provided the IOM Manual to Johnson & Wood or that Plaintiff Failed to Read or Follow the IOM Manual [141] are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Emergency Motion to Exclude Defense Expert Mattice's Untimely Rebuttal and New Opinions and Data Dump [161] is **GRANTED**.

**SO ORDERED**.


s/Arthur J. Tarnow
Arthur J. Tarnow
Dated: December 12, 2019          Senior United States District Judge