UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KYLE DAVIS and BETTY DAVIS,   Case No. 15-cv-11125
                              Hon. Judge Arthur Tarnow
    Plaintiffs,           Magistrate Elizabeth A. Stafford
vs.

TRANE U.S. INC. d/b/a TRANE,
a foreign corporation,

    Defendant.
_____/

## JOINT FINAL PRETRIAL ORDER

The following is the Joint Proposed Final Pretrial Order.

**1.**    **JURISDICTION.**

Subject matter jurisdiction is based on diversity of citizenship under 28 U.S.C. §1332 and no party disputes jurisdiction.

**2.**    **CLAIMS.**

    **A. Plaintiffs' Claims**

This is a product liability action (pursuant to Mich. Comp. Laws 600.2946(2), 600.2946a(3) and 600.2949a), an implied warranty action, a breach of express warranty action, gross negligence action and willful disregard action against Defendant Trane. Plaintiffs seek recovery for Plaintiffs Kyle Davis and Betty Davis for the following injuries, including but not limited to:
- Quadriplegia
- pain and suffering
- emotional distress and depression
- loss of ability to enjoy the normal functions and pleasures of life

- loss of bowel and bladder control
- loss of the ability to use his arms and legs
- Hospital, nursing and allied care, including round-the-clock home nursing care, and the reasonable costs and expenses thereof
- Housing, transportation, rehabilitation and other related and reasonable expenses and costs of his injury
- Loss of employment and the loss of employment opportunity, and loss of wages and earning capacity
- Humiliation and confinement to a wheelchair for the rest of his life
- Loss of sexual function
- As to Betty Davis - loss of consortium of her husband and the daily repetition of that loss in each and every facet of her life

### Defendant's Theories and Defenses

Plaintiffs bring various product liability claims against Trane including defective design, defective warnings, and breach of warranty. Trane designed and manufactured a chiller identified as a model RTWD 250 (the "Chiller"). The Chiller met or exceeded all industry standards, was safe and was not defective in its design and its warnings. The Chiller also did not breach any express or implied warranties. Trane is entitled to judgment as a matter of law on all of these claims. Unfortunately, Plaintiff Kyle Davis was injured when the Chiller fell off an elevated platform during a botched installation at Wayne Memorial High School, in Wayne Michigan. The Wayne Westland Community School District selected Plaintiff's employer Johnson & Wood LLC as the contractor to install the Subject Chiller at the high school.

Plaintiff is at fault for this accident. Plaintiff—trained in the rigging and installation of industrial equipment—was the lead foreman responsible for ensuring the safe and successful installation of the Chiller. However, Plaintiff ignored Trane's recommended installation methods in Trane's instruction manuals. He also neglected to read available warnings and instructions contained in those manuals and on the Chiller itself, including the express warnings that lifting the chiller by the non-recommended methods could result in serious injury. Specifically, Trane instructed that the Chiller be lifted with either a forklift or overhead rigging support. Plaintiff neglected to employ either of those methods (both of which were safely employed by subsequent contractors lifting the *same* model of Trane chiller at the *same* jobsite). Plaintiff instead chose to set the Chiller down one end at a time and to lift the Chiller by balancing one end of the Chiller on the head of a hydraulic ram

2

tool (inappropriately being used as a jack) without overhead support. During that installation maneuver, the chiller rotated and struck Plaintiff. Plaintiff's own, unsafe rigging and installation methods, not any design feature of the Chiller, were the cause of this accident.

Johnson & Wood is also at fault for this accident. The company purports to be an experienced mechanical contractor. It exposed Plaintiff to unreasonable risk of harm by sending Plaintiff and his crew to the installation site, under-equipped and under-prepared. The company failed:

- to hire outside professional riggers to complete the installation component of the project, as previously promised;

- to provide the crew with sufficient equipment to allow safe, appropriate rigging of the Subject Chiller;

- to provide necessary manuals to the Subject Chiller and tools they were using to install the Chiller; and

- to develop and/or implement company training and safety policies that could have prevented the accident.

The company Johnson & Wood is a non-party-at-fault, to whom fault may be appropriately allocated by the jury for any and all of the foregoing reasons.

Plaintiffs cannot meet their burden of proving that the Chiller is defective under Michigan law for at least the following reasons. **First**, Trane contends that Plaintiffs' product liability claims are completely barred by the Michigan Product Liability Act because of Mr. Davis's decision to lift the Chiller in total disregard of the rigging instructions and warnings constitute unforeseeable misuse and assumption of the risk. **Second**, Trane contends Plaintiffs' warning claims must fail because both Mr. Davis and Johnson & Wood were "Sophisticated Users," nullifying any duty to warn as a matter of law in the first place. Even if the law imposed a duty to warn under these circumstances (which it does not), Plaintiff cannot show that any warnings proximately caused his injuries because he neglected to review all warnings (or ignored them) in the first place. **Third**, Plaintiffs cannot meet their burden of proving a defective design, because an alternative design would not have prevented the harm caused by Mr. Davis's unforeseeable misuse. **Fourth** Plaintiff's Warranty claims fail as a matter of law, too. Plaintiffs' express warranty claim fails because they have not identified an actionable representation by Trane

and because Trane did not breach any warranties that it actually made. Plaintiffs' implied warranty claims are precluded by Mr. Davis's misuse and his status as a sophisticated user, under Michigan law. **Lastly**, Trane also is entitled to judgment as a matter of law on Plaintiffs' other claims because they are not available and/or Plaintiffs cannot establish *prima facie* cases.

**4.    STIPULATION OF FACTS.**

These facts are based on the statement of facts submitted by the parties with respect to the Defendant's summary judgment motion.

> A.    The following facts are not contested by the parties and require no proof:
>
> 1. TRANE manufactured a chiller, a machine used for cooling, that is identified as a RTWD 250 chiller.
> 2. TRANE designed and manufactured the RTWD 250 chiller involved in this lawsuit.
> 3. Wayne Westland High School purchased a RTWD 250 chiller for installation.
> 4. Plaintiff Kyle Davis was employed by a company named Johnson and Wood.
> 5. Johnson and Wood inspected Wayne Westland School and bid to install the RTWD 250 chiller.
> 6. Johnson and Wood received a submittal for the chiller on January 12, 2012.
> 7. Before the day of the installation, Plaintiff Kyle Davis and the Johnson and Wood project manager Brian Johnson, visited Wayne Westland High School boiler room to evaluate the installation process.
> 8. On March 30, 2012, Mr. Davis was the lead foreman of a Johnson and Wood crew that included Chris Richardson, Shannon Ewka and Steven Ehrmantraut.
> 9. At some point prior to the accident, Mr. Ewka left the premise.
> 10. While attempting the installation of the Chiller, an accident occurred that pinned plaintiff Kyle Davis between the Chiller and the floor.

11. Mr. Davis suffered injuries as a result of the accident, including C5-C7 incomplete quadriplegia

## 5. ISSUES OF FACT TO BE LITIGATED.

How the accident happened and facts supportive of the parties claims and defenses.

## 6. ISSUES OF LAW TO BE LITIGATED.

A. PLAINTIFFS' ISSUES OF LAW

1. Negligent/Gross Negligent Design
    a. As to Plaintiff's negligent/gross negligent design claim, that the severity of Plaintiff's injury was foreseeable by the Trane;
    b. that the likelihood of occurrence of the injury was foreseeable by Trane at the time of distribution of the subject Chiller;
    c. That the use of the Chiller as it existed at the time of the incident, by Kyle Davis and his coworkers, was reasonably foreseeable to Trane at the time of distribution;
    d. that there was a reasonable alternative design available that would have prevented the tipover such as widening of the base of the chiller to the same width as the widest portion of the chiller as designed by Trane;
    e. that the available alternative design was practicable;
    f. that omission of the available and practicable reasonable alternative design rendered defendant's product not reasonably safe.
    g. The alternative design Chiller would not have tipped over with the use of a jack and skates.
    h. The tip-over was a direct and proximate result of the Chiller's top heavy, unstable design, inaccurate lifting instructions and information, and inadequate warnings.
    i. That numerous tipovers of chillers have occurred.
    j. that each time a chiller tips over TRANE fails to investigate the root cause, voids all warranties, and forces

    the installer's insurer to purchase a new chiller from TRANE.

2. Negligent/Gross Negligent Warning
   a. As to Plaintiff's negligent/gross negligent warning claim, that the severity of Plaintiff's injury was foreseeable by the Trane;
   b. That the use of the Chiller at the time of the incident was foreseeable to Trane at the time of distribution;
   c. that the likelihood of occurrence of the injury was foreseeable by Trane at the time of distribution of the subject Chiller;
   d. that TRANE undertook to warn but failed to include pertinent information in its warnings including:
      i. TRANE had never measured the height of the CG on its chillers;
      ii. TRANE had misidentified the location of the CG on its chillers;
      iii. TRANE failed to notify its customers and installers that tipovers had occurred in the field while chillers were being lifted or moved using common industry practices such as skates and jacks;
      iv. TRANE's only approved methods of lifting and moving chillers are often impossible to follow, forcing installers to improvise in order to install chillers leading to tipover;
   e. that there was a reasonable alternative design available, including but not limited to:
      i. actual measurement of the height of the CG
      ii. accurate identification of the location of CG;
      iii. warning installers that tipovers have occurred during installation using common industry practices such as skates and jacks
      iv. accurately advising that TRANE's only approved methods for lifting or moving chillers are often impossible to follow and installers can be forced to improvise leading to tipovers; and/or
      v. chillers have tipped over when installed using common industry tools such as skates and jacks;

6

       f. that the available alternative design was practicable;
       g. that omission of the available and practicable reasonable alternative design rendered defendant's product not reasonably safe.
       h. The alternative design Chiller would not have tipped over with the use of a jack and skates.
       i. The tip-over was a direct and proximate result of the Chiller's top heavy, unstable design, inaccurate lifting instructions and information, and inadequate warnings.
       j.

3. Implied Warranty
       a. the Trane Chiller was not reasonably fit for the use or purpose anticipated or reasonably foreseeable by the defendant, in one or more of the ways claimed by the plaintiff
       b. the Trane Chiller was not reasonably fit for the use or purpose anticipated or reasonably foreseeable by the defendant at the time it left the defendant's control
       c. the plaintiff was injured
       d. the unstable design and inappropriate warnings/instructions was a proximate cause of the injuries to plaintiff.

4. Applicability of product liability cap on noneconomic damages

5. Meaning and application of MCLA § 600.2945(e) and MCLA § 600.2947(2).

DEFENDANT'S ISSUES OF LAW

1.    Defective Design- Negligent Design

     Consistent with M.C.L. 600.2946, Plaintiff bears the burden of establishing that the Trane RTWD 250 was not reasonably safe at the time the Chiller involved in this accident left the control of Trane and that, according to generally accepted production practices at the time the specific unit of the product left the control of the Trane, a practical and technically feasible alternative production practice was available that would have prevented the harm without significantly impairing the

7

usefulness or desirability of the product to users and without creating equal or greater risk of harm to others.

Plaintiff's alternative design can be deemed "practical" and "feasible" only if the technical, medical, or scientific knowledge relating to production of the RTWD 250, at the time the specific RTWD 250 at issue in this case left the control of Trane, was developed, available, and capable of use in the production of the product and was economically feasible for use by the manufacturer. Technical, medical, or scientific knowledge is not economically feasible for use by the manufacturer if use of that knowledge in production of the product would significantly compromise the product's usefulness or desirability.

2. Defective Design- Negligent Warning

Consistent with M.C.L. 600.2946, Plaintiff bears the burden of establishing that the Trane RTWD 250 was not reasonably safe at the time the RTWD 250 involved in this accident left the control of Trane because of an inadequate warning and that, according to generally accepted production practices at the time the specific unit of the product left the control of the Trane, a practical and technically feasible alternative warning was available that would have prevented the harm without significantly impairing the usefulness or desirability of the product to users and without creating equal or greater risk of harm to others.

Plaintiff's alternative warning is practical and feasible only if the technical, medical, or scientific knowledge relating to production of the RTWD 250, at the time the specific RTWD 250 at issue in this case left the control of Trane, was developed, available, and capable of use in the production of the product and was economically feasible for use by the manufacturer. Technical, medical, or scientific knowledge is not economically feasible for use by the manufacturer if use of that knowledge in production of the product would significantly compromise the product's usefulness or desirability.

3. Plaintiffs' Express Warranty Claim

Can Plaintiff prove that Trane made a statement or otherwise represented (orally, in writing, or by any other means) that the Chiller had certain characteristics or would meet certain standards?

Can Plaintiff prove that Trane (1) expressly warranted the Chiller in one or more ways; (2) that Plaintiff reviewed and relied upon the express warranty; (3) that the Chiller failed to meet the terms of the express warranty in any way; (4) that the Chiller failed to meet the express warranty terms at the time it left Trane's

8

control; (5) that Plaintiff was injured; and that Plaintiff's injury was proximately caused by the Chiller's failure to meet the express warranty, if at all.

Can Plaintiff prove that any such express warranty was not limited?

4. Plaintiffs' Implied Warranty Claim

Can Plaintiff prove (1) that the Chiller was not reasonably fit for the use anticipated and reasonably foreseeable by the defendant; (2) that the Chiller was so unfit at the time the Chiller left Trane's control; (3) that the Plaintiff was injured; (4) and that those injuries as proximately caused by the defect or unfit condition claimed by Plaintiff.

5. Trane's Defense-Misuse

Did Plaintiff unforeseeably misuse the Trane Chiller, (i.e., "contrary to Trane's instructions and warnings, as defined by MCL § 600.2945(e)), precluding liability as a matter of law?

6. Trane's Defense-Assumption of Risk

Did Plaintiff assume the risk of his injury, precluding liability as a matter of law?

7. Duty to Warn/No Duty to Warn Sophisticated User

Did Trane owe Plaintiff, a Sophisticated User, a duty to warn Johnson and Wood Plaintiff Kyle Davis that misuse was dangerous? Also, was there any associated duty to warn a sophisticated user?

8. Trane's Defense-Proximate Cause As to Warnings

Can Plaintiffs show that inadequate warnings proximately caused his injuries where he neglected to review available warnings?

9. Trane's Defense-No Alternative Design That Would Have Reduced Risk

Can Plaintiffs establish a prima facie design defect claim where their proposed alternative designs are not practical or feasible and would not have reduced the risk of injury posed by his unforeseeable misuse? Also, Plaintiffs never

proffered an alternative warning and cannot make the requisite showing under Michigan law.

10. Trane's Defense- No Express Warranty

Can Plaintiffs establish an express warranty claim where Plaintiffs have not identified any actionable representation or promise by Trane, and where Trane did not breach any existing representation or promise regarding the Chiller's performance?

11. Trane's Defense-No Implied Warranty

Can Plaintiffs maintain an implied warranty claim where the Chiller was not defective and unreasonably dangerous at the time it left Trane's control, and/or Kyle Davis was a Sophisticated User, and misused the Chiller outside of its intended use?

12. Trane's Defense-Punitive Damages

Can Plaintiffs demonstrate the requisite level of conduct necessary to establish punitive or exemplary damages?

13. Trane's Defense-No Gross Negligence

Can Plaintiffs prove a colorable claim of gross negligence claim, given Plaintiff Kyle Davis' and Johnson & Woods' status as Sophisticated Users, and where Trane's efforts to provide safety warnings and instructions do not show a substantial lack of concern for whether injury results?

14. Trane's Defense-Comparative Fault of Kyle Davis

Was Plaintiff Kyle Davis comparatively at fault and was his comparative conduct partially or wholly responsible for his alleged injuries?

15. Trane's Defense-Non-Party At Fault Johnson & Wood

Was Plaintiff Kyle Davis' employer, Johnson & Woods, at fault and was its fault partially or wholly responsible for Plaintiffs' injuries or damages?

**7.   EVIDENCE PROBLEMS LIKELY TO ARISE AT TRIAL.**

Plaintiffs' Likely Evidence Problems:

- Admissibility of the 2012 IOM for the Chiller
- Admissibility of the warnings or literature associated with the Westward jack used during the installation of the Chiller
- Admissibility of testimony regarding subsequent remedial measures as to the re-installation of the subject chiller and replacement chiller, including but not limited to Kevin Jouppi
- Admissibility of hearsay contained in testimony of Nicholas Thornton as to alleged conversations with Brian Johnson
- Admissibility of written Steven Ehrmantrout statement post-accident as inadmissible hearsay
- Ability of Defendant's experts to render any testimony regarding rigging
- Admissibility of testimony of MIOSHA representatives, including MIOSHA representatives' qualifications and foundation

Defendant's Likely Evidence Problems:

- Admissibility of subsequent remedial measures or the communications surrounding the remedial measure (See Motion In Limine (Docket #148) and Court's December 12, 2019, ruling at page 12.)
- Admissibility of any of the purported OSIs (See Motions In Limine (Docket # 143, 145, and 147) and Court's December 12, 2019, ruling at pages 2-10.)
- Admissibility of Plaintiff's purported animation
- Chain of custody of hydraulic ram and skates
- Admissibility of prototype documents not representative of the RTWD 250 chiller
- Admissibility of any documentation other than the RTWD 250
- Admissibility of any isolator photographs taken years after the accident
- Admissibility of the "complete" files of experts as one exhibit

**8.   WITNESSES.**

  A. Plaintiffs' Witnesses: **See Document No. 234 – Plaintiffs' Rule 26 Pretrial Disclosure Witness List. (Objected to by Defendant)**

    B.    Defendant's Witnesses: **See Document No. 211 – Defendant's Rule 26 Pretrial Disclosure Witness List.**

**9. EXHIBITS.**

    A.    Plaintiffs' Exhibits. - **See Document No. 233 – Plaintiffs' Rule 26 Pretrial Disclosure Exhibit List. (Objected to by Defendant)**

    B.    Defendant's Exhibits: **See Document No. 212 - Defendant's Rule 26 Pretrial Disclosure Exhibit List.**

    C.    As to the following exhibits, the party against whom the exhibit is to be offered objects to the admission of the exhibit and offers the objection stated below:

        1.    <u>Plaintiffs' Objections to Defendant's Exhibits</u>

Plaintiffs object to the admission of any material regarding the Westward Ram including the Westward Ram manual or any other literature regarding the Westward Ram used by the Plaintiff at the time of the incident.

Plaintiffs object to the admission of any MIOSHA material regarding investigation of the incident in this case, or any violations or citations issued in response to the incident at issue in this case.

Plaintiffs object to the admission of documents created by Nicholas Thornton.

Plaintiffs object to the admission of the 2012 IOM regarding the RTWD Chiller

Plaintiffs object to testimony regarding subsequent remedial measures as to the re-installation of the subject chiller and replacement chiller

Plaintiffs object to introduction of information regarding workers compensation insurance

Plaintiffs object to expert testimony and opinions outside of those contained within Defendant's expert Rule 26 disclosures and object to

12

demonstrative exhibits offered in connection with expert testimony as said Defendant's experts lack the necessary qualifications to testify regarding rigging and the conditions contained within the demonstrative exhibits are in no way substantially similar to the event in question and is therefore misleading. Plaintiffs would ask that the Court rule consistent with the exclusion of Defendant expert Jason Mattice's newly disclosed opinions.

Plaintiffs further rely on all motions in limine filed with this Court for objections related to exhibits.

Plaintiffs further attach a chart of their objections to Defendant's exhibits.

2. Defendant's Objections to Plaintiff's Exhibits

Defendants intend to file as a separate filing a chart of their objections to Plaintiffs' exhibits.

10. **DAMAGES.**

**Plaintiffs' damages include:**

Economic damages include lost earning capacity, household services, caretaking services (professional care), medical care (including equipment, therapies, doctor visits, etc.).

The economic value of these items is approximately as follows (it should be noted that the numbers provided do not account for present cash reduction of future damages):

| | |
|---|---|
| Lost earning capacity (past and future): | $ 4,257,773 |
| Household services (past and future): | $ 1,289,636 (2 hours/day) to $ 1,934,455 (3 hours/day) |
| Future medical expenses: | $ 28,389,506 |
| Past medical expenses: | $5,236,317.47 |

13

    **Approximate total economic damages**:  $39,173,232.47
                        to
                         $39,818,051.47

  The past medical expenses amount as well as the past earning capacity amounts will have changed by the time of trial because some of the future amounts will be actual amounts paid by then. The numbers will be updated and clarified before trial.

  Non-economic damages include pain & suffering, emotional distress, humiliation, embarrassment, loss of consortium, etc., for both Kyle and Betty Davis. These damages inherently are not subject to precise calculation and are left within the sound discretion of the jury based on the evidence.

**Defendant's Objection to Plaintiffs' Damages Claims:** Defendant contests some of the purported damages and the damage calculations proposed by Plaintiffs' experts. Defendant also contends that Plaintiffs cannot make the requisite showing to establish that punitive and/or exemplary damages are warranted. The record in this case lacks sufficient evidence for Plaintiffs to prove an entitlement to punitive or exemplary damages. Further, punitive damages are not recoverable as a matter of law.

11. **TRIAL.**

  A.  This is a jury trial.

  B.  Length of trial.

Plaintiffs believe that the trial will take three weeks assuming full trial days.

Defendants believe the trial will take much longer if the existing scheduling order is modified. When the parties originally estimated trial length at 3 weeks, Defendant was proceeding under the assumption that Judge Cohn's previously imposed limitations, never withdrawn or modified by this Court, were applicable. If Plaintiffs are allowed to call 23 fact witnesses, live or by deposition, and 5 damage experts, the length of this trial cannot be less than 5 weeks assuming full

14

trial days. If the court is inclined to go shorter days, the estimated trial will be considerably longer.

**12. <u>SETTLEMENT.</u>**

The parties have engaged in settlement discussions previously, with the Court. The discussions have not resulted in settlement.

SO ORDERED.

                                                                 s/Arthur J. Tarnow
                                                                 ARTHUR J. TARNOW
                                                                 SENIOR U.S. DISTRIC JUDGE

March 10, 2020

                                                                 Respectfully submitted,

                                                                 <u>/s/ Courtney E. Morgan Jr. (P29137)</u>
                                                                  Courtney E. Morgan Jr. (P29137)
                                                                  Brian T. Keck (P77668)
                                                                  Law Offices of Courtney Morgan PLLC
                                                                 3200 Greenfield, Ste. 355
                                                                 Dearborn, MI 48120
                                                                 (313) 395-2568
                                                                 cmorgan@courtneymorganlaw.com
                                                                 bkeck@courtneymorganlaw.com

                                                                 Richard M. Goodman (P14169)
                                                                 Kathleen J. Kalahar (P60301)
                                                                 Attorneys for Plaintiffs
                                                                 1394 East Jefferson Ave.
                                                                 Detroit, MI 48207
                                                                 (313) 567-6165
                                                                 rgoodman@goodmankalahar.com
                                                                 kkalahar@goodmankalahar.com

Paul A. Zebrowski (P44427)
Thomas A. Biscup (P40380)
Co-Counsel for Plaintiffs
45952 Schoenherr Rd.
Shelby Township, MI 48315
(586) 566-7266
paul@zebrowskilaw.com
tom@zebrowskilaw.com


DYKEMA GOSSETT, PLLC

By:  */s/ James P. Feeney* (P13335)
James P. Feeney  (P13335)
Harold D. Pope (P34882)
Brian T. Smith (P56174)
Bryce Rucker (P79455)
39577 Woodward Avenue
Suite 300
Bloomfield Hills, MI 48304
(248) 203-0700
jfeeney@dykema.com
hpope@dykema.com
btsmith@dykema.com
brucker@dykema.com
*Attorneys for Defendant Trane U.S. Inc., d/b/a Trane*


Dated:        March 2, 2020

16